## In re SHEINBERG.

(District Court, S. D. New York.   May 12, 1915.)

BANKRUPTCY ⬡═408—DISCHARGE OF BANKRUPT—GROUNDS FOR REFUSAL.

Bankr. Act July 1, 1898, c. 541, § 29b (2), 30 Stat. 554 (Comp. St. 1913, § 9613), makes it an offense to make a false oath in relation to any proceeding in bankruptcy. Section 21a provides that a court of bankruptcy may require any person, including the bankrupt, to appear for examination concerning the acts, conduct, or property of the bankrupt. A bankrupt, examined at an adjourned first meeting of creditors, gave false and evasive testimony concerning an alleged bank deposit which he had listed in his assets in a statement made to a mercantile agency. Held, that such false testimony required the denial of a discharge, though it was not shown that any creditor relied upon the statement to the agency, this not making the false oath immaterial, since, where a bankrupt is interrogated respecting a matter going to the question of his discharge, such interrogation relates to a proceeding in bankruptcy, and the oath is made in regard to a relevant subject.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. ⬡═408.]

In Bankruptcy. In the matter of Hyman Sheinberg, bankrupt. Report of special master confirmed and discharge denied.

Leonard Bronner, of New York City, for the motion.
Abraham Brill, of New York City, opposed.

MAYER, District Judge. The bankrupt gave a statement to the commercial agency known as R. G. Dun & Co., on February 12, 1912, which was as follows:

Firm name, Hyman Sheinberg.
Engaged in Men's Furnishing Business at No. 66 Delancey St., City of N. Y., County of N. Y., State of N. Y.
From inventory of Feb. 10th, 1912.   Dated Feb. 12th, 1912.

Assets.

| | |
|---|---:|
| Merchandise on hand | $3,000 |
| Machinery, furniture, and fixtures | 600 |
| Cash on hand | 200 |
| Cash in bank, in savings bank | 1,100 |
| Total available assets | $4,900 |

Liabilities.

| | |
|---|---:|
| For merchandise not due | $350 |
| Total liabilities | 350 |
| Surplus in business | $4,550 |

In this comparatively modest list of assets the $1,100, representing cash in bank and in savings bank, was a substantial proportion. At the

first meeting of creditors before the referee in bankruptcy a somewhat extended examination was engaged in for the purpose of ascertaining whether, in point of fact, the bankrupt had on deposit in the savings bank in February, 1912, the sum of $1,000. I do not place a great deal of importance on the testimony at page 18, Stenographer's Minutes, which was to the effect that the statements given by the bankrupt to his creditors and to the agencies were true. I say this, because these questions were rather general, and the bankrupt's attention should have been called to some particular statement or statements. On page 19 the bankrupt answered truthfully that he did not have a savings bank account in 1912 in the Dry Dock Savings Bank, but had such an account in 1911. On page 20 the question as to giving a statement to "the agency" was put too indefinitely. It would have been just as easy to ask the bankrupt whether he had made a statement to the Dun Agency as to ask the general question, and it might be urged that, in view of the questions as to the Paragon Company, the context was not clear.

The examination in which the questions just referred to were asked took place on November 19, 1913, and had the inquiry ended at that time there would not be enough upon which to predicate a denial of discharge to the bankrupt. On January 6, 1914, there was a further examination at an adjourned first meeting of creditors. At this time it appeared that the bankrupt had given R. G. Dun & Co. the statement on February 12, 1912, mentioned supra. It turned out that the bankrupt did not have any account in his name at the Dry Dock Savings Bank on the date in question; his account at that bank having been closed on January 6, 1911. There was an account in this same savings bank to the credit of his brother, Barnett Sheinberg, which had been opened on January 9, 1911, with a deposit of $750, to which had been added $26.47 between that date and February 12, 1912, so that the total at that time was $776.47. Thus, on February 12, 1912, the brother did not have $1,000 to his credit. From this point on the testimony of the bankrupt before the referee was evasive, and I think the referee was right in his conclusion that the testimony was false.

The bankrupt endeavored to account for his statement that he had $1,000 in the Dry Dock Savings Bank on February 12, 1912, by saying that his brother Barnett had deposited the $1,000 in his own name, instead of that of the bankrupt, and beginning with page 40 we have the all too frequent "I don't remember" testimony. The sooner some of these men learn that the bankruptcy court will strain every effort to prevent an unjust result by the resort to the "I don't remember," the better for the administration of the act. The alleged bankrupt is, according to the testimony, only about 30 years of age, and if he had been truthful he might have started over again with his debts wiped off the slate. It is taxing credulity to ask a court to believe that a man cannot remember the details concerning the disposition of $1,000, when the total of his assets on his own showing is not quite $5,000.

The motive for this false statement is perfectly clear to any one familiar with proceedings of this character. The bankrupt doubtless thought that in some way he would be held responsible for the false

statement made to the Dun Agency, and with that sort of cunning which ultimately trips up the man who indulges in it he thought that he could evade the consequences of his false statement by the kind of ·testimony which appears in this record.

No testimony was adduced to show that any creditor relied upon the statement to the Dun Agency, and the result is that, so far as that statement was concerned, nobody was hurt. But because one of several specifications on objection to discharge fails for lack of testimony, that result does not affect the ·question of a false oath. One of the grounds upon which a discharge must be denied is that set forth in section 29b (2) of the Bankruptcy Act, which, in defining offenses, refers to a person who knowingly and fraudulently "made a false oath or account in, or in relation to, any proceeding in bankruptcy."

I do not propose ,to give to this provision of the statute the narrow construction contended for by counsel for the bankrupt. The argument in effect is that, because the objectant did not succeed in showing that the statement to the Dun Agency was relied upon, therefore the false statement made no difference, and therefore the false oath in the proceeding before the referee was immaterial. But the result of the proceeding cannot be the test of the immateriality of the false oath. Wide latitude is accorded in this district to an inquiry under section 21a, for this court has long held the view that a prompt and comprehensive examination, sensibly conducted, may lead swiftly to the discovery of wrongdoing. If, therefore, a bankrupt is interrogated in respect of subject-matter which goes to the question of his discharge, such interrogation is clearly "in relation. to" a "proceeding in bankruptcy," and a false oath made in the course of an examination under the statute, and in regard to a relevant subject of inquiry, is the kind of a false oath which, in my opinion, the Congress intended should bar discharge.

For the reasons outlined, the report of the special master is confirmed, and the discharge is denied.