## In re SLOCUM.

### Appeal of LEDERER et al.

Circuit Court of Appeals, Second Circuit. November 1, 1927.

No. 30.

1. **Bankruptcy** 🔑408(1)—**Examination of bankrupt at first meeting of creditors held proceeding in bankruptcy, for material false oath at which discharge must be denied (Bankr. Act, §§ 14b, 29b [11 USCA §§ 32, 52]).**

Examination of bankrupt before referee at first meeting of creditors *held* proceeding in bankruptcy, within meaning of Bankruptcy Act § 29b (11 USCA § 52), and bankrupt, who knowingly and fraudulently makes false oath respecting material fact at such first meeting, is not entitled to discharge, under section 14b (11 USCA § 32).

2. **Bankruptcy** 🔑414(3)—**Evidence held to sustain findings of special master that bankrupt swore falsely at first meeting of creditors, precluding discharge (Bankr. Act, §§ 14b, 29b [11 USCA §§ 32, 52]).**

On objection to bankrupt's *discharge*, under Bankruptcy Act, §§ 14b, 29b (11 USCA §§ 32, 52), evidence *held* to sustain findings of special master that bankrupt had made false oath, precluding discharge, at first meeting of creditors relative to purchase of shares of corporation and receiving salary at time prior to filing petition.

3. **Bankruptcy** 🔑467(5)—**Findings of special master or referee, based on conflicting testimony, unless plainly mistaken, should be accepted.**

Findings of special master or referee, based on conflicting testimony, which involves credibility of witnesses, should be accepted, unless it appears that he has made plain mistake, and rule applies especially where motive and intent of bankrupt are material.

4. **Bankruptcy** 🔑242(1)—**Creditors are entitled to inquire what property has passed through bankrupt's hands during period prior to bankruptcy (Bankr. Act, § 7 [11 USCA § 25]).**

Creditors are entitled to inquire what property has passed through bankrupt's hands dur-

ing period prior to bankruptcy, under Bankruptcy Act, § 7 (11 USCA § 25), requiring bankrupt to submit to examination concerning conduct of business, cause of bankruptcy, dealings with creditors, and amount, kind, and whereabouts of property.

**5. Bankruptcy ⬳242(1)—Wide latitude must be accorded creditors with regard to length of period before bankruptcy as to which bankrupt may be examined (Bankr. Act, § 7 [11 USCA § 25]).**

Wide latitude must be accorded creditors of bankrupt with regard to length of period before bankruptcy as to which bankrupt may be examined concerning his conduct of business, dealings with creditors and property, under Bankruptcy Act, § 7 (11 USCA § 25).

**6. Bankruptcy ⬳408(1)—Materiality of bankrupt's false oath does not, in determining right to discharge, depend on whether falsehood injured creditors (Bankr. Act, §§ 14b, 29b [11 USCA §§ 32, 52]).**

In proceedings to prevent bankrupt's discharge, under Bankruptcy Act, § 14b (11 USCA § 32), materiality of false oath, under which discharge may be denied under section 29b (11 USCA § 52), does not depend on whether falsehood has in fact been detrimental to creditors.

**7. Bankruptcy ⬳408(1)—Alleged false testimony of bankrupt, denying purchase of stock four years prior to adjudication, held nevertheless material, warranting denial of discharge (Bankr. Act, §§ 14b, 29b [11 USCA §§ 32, 52]).**

On objections to discharge of bankrupt, under Bankruptcy Act, §§ 14b, 29b (11 USCA §§ 32, 52), for false oath at bankrupt's examination before referee at first meeting of creditors, alleged false testimony of bankrupt, denying purchase of stock four years prior to adjudication, *held* material, warranting refusal of discharge, though bankrupt may have disposed of stock long before filing petition.

**8. Bankruptcy ⬳414(3)—Finding that alleged false testimony of bankrupt was given knowingly and fraudulently, warranting refusal of discharge, held sustained by evidence (Bankr. Act, §§ 14b, 29b [11 USCA §§ 32, 52]).**

On objections by creditors to bankrupt's discharge, under Bankruptcy Act, § 14b (11 USCA § 32), for false oath of bankrupt, made ground for resisting discharge under section 29b (11 USCA § 52), evidence *held* sufficiently clear and convincing to sustain master's finding that false testimony was given "knowingly and fraudulently," warranting denial of discharge.

**9. Bankruptcy ⬳414(3)—Creditors, objecting to bankrupt's discharge, need only prove their allegations by fair preponderance of evidence (Bankr. Act, § 14b [11 USCA § 32]).**

On objections to bankrupt's discharge, under Bankruptcy Act, § 14b (11 USCA § 32), creditors need only prove their allegations by fair preponderance of evidence, as in other civil cases.

**10. Bankruptcy ⬳408(1)—Bankrupt's intentional untruth in material matter constitutes "false testimony knowingly and fraudulently given" (Bankr. Act, § 29b [11 USCA § 52]).**

Bankruptcy Act, § 29b (11 USCA § 52), providing for punishment of bankrupt on conviction of having knowingly or fraudulently perjured himself in bankruptcy proceedings, requires merely an intentional untruth in a matter material to the issue, which is itself material.

**11. Bankruptcy ⬳414(3)—Bankrupt's fraudulent intent in testifying falsely is proved by inference (Bankr. Act, § 29b [11 USCA § 52]).**

Bankrupt's intent in knowingly and fraudulently making false oath in bankruptcy proceeding, warranting imprisonment, under Bankruptcy Act, § 29b (11 USCA § 52), is proved by inference.

Appeal from the District Court of the United States for the District of Connecticut.

Application by H. Jermain Slocum, Jr., bankrupt, for a discharge, opposed by Simon Lederer and other creditors. A denial of bankrupt's discharge was recommended by the referee. On exceptions to the referee's report, the District Court granted a discharge, and said Lederer and others appeal. Reversed, with directions.

The above-named bankrupt duly filed an application for a discharge from his debts. In opposition thereto certain creditors filed specifications of objection. The matter was referred to a referee in bankruptcy as special master, who, after hearings, filed his report finding that the bankrupt had committed an offense under section 29b (2) of the Bankruptcy Act and recommending that a discharge be denied. The District Court sustained exceptions to the report and granted the bankrupt a discharge. From this order the objecting creditors have appealed.

Francis B. Wood, of New York City (Isidor Enselman and H. H. Nordlinger, both of New York City, of counsel), for appellants.

Edward K. Nicholson, of Bridgeport, Conn., for bankrupt, appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. Section 14 (b) of the Bankruptcy Act (11 USCA § 32) declares that the judge shall investigate the merits of the application and discharge the applicant "unless he has (1) committed an offense punishable by imprisonment as herein provided"; (2) or done certain other things not material to the present contro-

versy. The words descriptive of an offense which will preclude a discharge refer to section 29 (11 USCA § 52). Paragraph (b) of that section provides:

"(b) A person shall be punished, by imprisonment * * * upon conviction of the offense of having knowingly and fraudulently (1) concealed * * *; or (2) made a false oath or account in, or in relation to, any proceeding in bankruptcy. * * *"

[1] The false oath relied upon by the objecting creditors consisted in testimony given by the bankrupt upon his examination before the referee at the first meeting of his creditors. Such examination is a "proceeding in bankruptcy," within the meaning of section 29 (b), and a bankrupt who has knowingly and fraudulently made a false oath respecting a material fact at the first meeting of creditors is not entitled to a discharge. In re Gaylord, 112 F. 668 (C. C. A. 2); In re Zoffer, 211 F. 936 (C. C. A. 2).

[2] Several grounds of objection were specified by the creditors, but only two were sustained by the special master. One of them alleged that the bankrupt had falsely sworn that he had not purchased any shares of National Tin stock from one Lederer; the other that he had falsely sworn that in 1919 he did not receive any salary from the Corbett Company. The master's report stated:

"As to objection (a), I am fully satisfied that the bankrupt did buy National Tin stock from Lederer and gave notes in payment for same, and that this stock, or the major part of it, was afterwards sold. Whether Adelson was the one who really benefited by the transaction, or whether the estate would be any better off if the bankrupt had testified fully, honestly and frankly, I am not prepared to say; but at any rate the trustee and creditors were entitled to the information which I feel sure the bankrupt possessed, but failed to disclose on examination.

"The same is true as to the matter of salary paid by the Corbett Company. * * * And in stock transactions and the Corbett Company salary matters I find that the bankrupt knowingly and fraudulently made a false oath, and rendered a false account in relation to this proceeding, and in my opinion is not entitled to a discharge, and I therefore recommend that his petition for discharge be denied."

The matter having been re-referred to the master to take further testimony, he filed a supplemental report, in which he adhered to his former findings and recommendation. Exceptions to the master's report were sustained by the District Court, and a discharge granted. From the court's opinion it appears that he considered the evidence insufficient to support the finding that the bankrupt had deliberately sworn to an untruth.

We do not think it necessary to recite in extenso the evidence. In brief, it appears with reference to the Tin stock that the bankrupt testified positively that he never purchased any of the stock. Lederer testified positively that the bankrupt and one Adelson came to his office to borrow money; that he refused to lend money, but offered to sell Tin stock on credit, taking their notes for the purchase price; that the bankrupt thereupon wrote out his note for $2,500, which Adelson indorsed, and in exchange for this Lederer gave them a "street certificate" for $2,500 worth of stock; whether Adelson or the bankrupt took possession of the certificate he did not recall; that afterward Adelson brought other similar notes and received other similar certificates. The bankrupt admitted that Lederer received the notes, but offered a different explanation as to when and for what consideration they were given to him. Obviously the master did not credit his explanation.

With respect to the salary matter, there was also a direct conflict of testimony. When the bankrupt was asked if he was sure he never received a salary of any considerable amount from the Corbett Company, he replied, "I know I did not." Mr. Corbett, the secretary and treasurer of the corporation, testified that from about April, 1919, till October or November of the same year, he drew monthly salary checks of $500 to the order of the bankrupt. One such check he remembered handing to him. The others were left in the company's office, with instructions to a clerk to deliver them. The checks were all paid through the bank, and the bank account was balanced. He did not remember how the checks were indorsed. The canceled checks and other records of the corporation had disappeared. The instructions to pay the bankrupt a salary were given the treasurer by the president, Mr. Nixon. It was stipulated that Mr. Nixon, if called, would have testified that he gave the treasurer such instructions, and that the reason for the salary was that they wanted Mr. Slocum to act as a watchdog over Mr. Adelson to keep the expenses down. After Mr. Corbett's testimony was given, the bankrupt testified that he did not recall receiving any such checks.

[3] From the foregoing it is apparent that whether the bankrupt intentionally testified falsely regarding the matters in dispute turns entirely upon the credibility of the witnesses.

The special master, who heard them and saw them, is better qualified to determine this issue than is the District Judge, or this court from the printed record. Hence the rule has become established that, when the action of the special master or referee is based upon conflicting testimony which involves the credibility of witnesses, his findings ought to be accepted, unless it appears that he has made a plain mistake; and particularly is this true where the motive and intent of the bankrupt becomes material. Ohio Valley Bank v. Mack, 163 F. 155, 158, 24 L. R. A. (N. S.) 184 (C. C. A. 6); Baker v. Bishop-Babcock-Becker Co., 220 F. 657, 658 (C. C. A. 4); Bank of Commerce v. Matthews, 257 F. 292, 294 (C. C. A. 7); Id., 272 F. 263; Walter v. Atha, 262 F. 75, 77 (C. C. A. 3); In re Wheeler, 165 F. 188 (C. C. A. 7); In re Croonborg, 268 F. 352 (C. C. A. 7); In re Hodge, 205 F. 824 (D. C. N. D. N. Y.); In re Stafford, 226 F. 127 (D. C. Conn.). From the printed record we cannot say that the findings of the special master were plainly wrong. Therefore the District Court was in error in overruling them, unless as a matter of law the facts were immaterial as to which the bankrupt intentionally testified falsely.

It is urged that the matters inquired into were too inconsequential and too remote to justify denial of a discharge, even if the bankrupt were proved to have testified falsely regarding them. The adjudication was on April 28, 1925. The alleged receipt of salary was in 1919, and of the stock in 1921. There is no suggestion that either salary or stock was on hand at the time the petition was filed. Lederer testified that two-thirds of the stock he bought back in the open market. How it came upon the market, or what became of the remainder, does not appear.

[4-6] Section 7 of the Bankruptcy Act (11 USCA § 25) requires the bankrupt to "submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate." A somewhat similar provision, including third persons as witnesses, is to be found in section 21a being 11 USCA § 44. The object of these provisions has been often discussed. In re Horgan, 98 F. 414 (C. C. A. 2); Ulmer v. United States, 219 F. 641 (C. C. A. 6); In re Youroveta Home, etc., Co., 288 F. 507, 513 (C. C. A. 2). It cannot be doubted that the creditors are entitled to inquire into what property has passed through the bankrupt's hands during a period prior to his bankruptcy. Over what span of time the inquiry should range must depend on the particular circumstances, but we think that wide latitude must be accorded to such an examination, and that the materiality of the false oath will not depend upon whether in fact the falsehood has been detrimental to the creditors. In re Conroy, 134 F. 764 (D. C. E. D. Pa.), where the inquiry related to property transferred eight years before the bankruptcy; United States v. Rosenstein, 211 F. 738 (D. C. E. D. N. Y.), a transaction four years old. See, also, In re Sheinberg, 223 F. 218, 220 (D. C. S. D. N. Y.); Ulmer v. United States, supra.

[7] In the case at bar, we think it was material to inquire into the consideration for Lederer's notes, and the creditors were entitled to the information that they were for the purchase of National Tin stock, even though the bankrupt had parted with such stock long before his bankruptcy, or had never had any benefit of it because of Adelson's disposal of the certificates. The materiality of inquiry into the receipt of $2,000 or $3,000 as salary six years before the bankruptcy is not so obviously apparent. The bankrupt had liabilities of more than $165,000 and assets of about $1,000, and we should be disposed to allow the examination wide range under these circumstances. It becomes unnecessary, however, to decide the materiality of the salary inquiry, in view of the finding that the bankrupt testified falsely as to the Tin stock.

[8-11] It is urged further that the evidence is not sufficiently clear and convincing that the false testimony was given "knowingly and fraudulently." While the statute does not withhold a discharge from a bankrupt who has testified falsely through error, its benefits are intended only for honest debtors. Those who purposely answer untruthfully concerning material matters propounded upon their examination deserve no favor. It is true that it is Lederer's testimony against the bankrupt's. But the objecting creditors need only prove their allegations, as in other civil cases, by a fair preponderance of the evidence. In re Garrity, 247 F. 310 (C. C. A. 2). The words of the statute requiring that the testimony be given "knowingly and fraudulently" mean no more than "an intentional untruth in a matter material to the issue which is itself material." In re Troeder, 150 F. 710, 713 (C. C. A. 1). See, also, Wechsler v. United States, 158 F. 579 (C. C. A. 2); Kahn v. United States, 214 F. 54 (C. C. A. 2); Epstein v. United States, 196 F. 354 (C. C. A. 7). The matter of intent is proved by

inference. The master, who saw and heard the witness, has found that the bankrupt intentionally testified falsely, and for the reasons above stated his finding should have been accepted by the court.

The order is reversed, with directions to overrule the exceptions and enter an order denying the application for a discharge.