GERTH REALTY EXPERTS, Inc., v. WARD.
No. 6419.

Circuit Court of Appeals, Fifth Circuit.
March 23, 1932.

Jack Hays, W. L. Tilden, and W. H. Poe, all of Orlando, Fla., for appellant.

W. B. Crawford and Warren B. Parks, both of Orlando, Fla., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This is an appeal from a finding and judgment that appellant, an auctioneer, had not earned the commission sued for. In the court below and here the sole question presented for determination was whether the property which was cried off to E. S. Hackney had been, within the meaning of the contract claimed under, sold "to one of your own prospects and not to one with whom the present trustee has been negotiating."

Appellee insists that this is a fact question, and that, the referee having heard the witnesses and determined it adversely to appellant, the judgment of the court affirming his finding will not be disturbed. Parker v. Interstate Trust & Banking Co. (C. C. A.) 56 F.(2d) 792; In re Slocum (C. C. A.) 22 F.(2d) 282, 285; In re Perel (D. C.) 51 F.(2d) 506. Appellant urges that there is no dispute of facts in the case; that the question is therefore one of law as to the effect of those facts; that the case really turns upon what legal effect is given to the contractual proviso "one of your own prospects." It urges that the contract in effect entitles appellant to a commission, if it was the procuring cause of Hackney's buying, even though in a strictly literal sense the trustee had had negotiations with him.

We do not so construe the contract. We think it plainly means what it plainly says, and that two things must concur to entitle the auctioneer to a commission: (1) The purchaser at the sale must have been procured by the auctioneer, and (2) he must not be one with whom the trustee had negotiated, for it is plain that the contract excludes from the auctioneer's claim of procurement, as definitely as if he had been specifically named, any one whom the trustee had been endeavoring to interest.

If, however, we construe the contract as appellant does, appellee would still be right that the case is a fact case; for, though there was no substantial difference between the witnesses as to what was said and done, the decision of the case must at last turn upon the fact inference whether what was said and done made Hackney, the purchaser, one of appellant's own prospects. Further, we think that under the undisputed evidence the same result of nonliability must follow, whether the two clauses in the proviso be regarded as cumulative or mutually exclusive; that is, whether they be regarded as permitting recovery for a sale to one actually induced by the auctioneer to buy, even though he was one with whom the trustee had been negotiating, or as denying recovery, even though the purchaser was procured by the auctioneer, if he was one with whom the trustee had been negotiating.

We think that the evidence fully sustains, in fact requires, the finding that Hackney, the purchaser, was within the meaning of the contract, one with whom the trustee had been negotiating, and that he was not one of the auctioneer's own prospects; that is, one whom the auctioneer's efforts had procured to purchase. The case on the facts is briefly this:

Amherst Apartments Company, bankrupt, owned an apartment incumbered with a mortgage securing $139,000 of bonds; of these bonds Hackney owned $95,000. In February, 1930, appellant, under an arrangement with the trustee, had held an auction sale at which the property was struck off for $155,000, but, the purchaser failing to comply with his bid, the sale came to nothing. Prior to this sale the auctioneer did endeavor to interest Hackney in the purchase; Hackney, however, did not bid at the sale. Afterwards the trustee on his own account made sales efforts to dispose of the property. At the trustee's directions his agent, Mrs. Wichtendahl, the manager for him of the apartment in question, brought the matter of the sale of the apartment to Hackney's attention, urging upon him the

desirability of interesting himself in the purchase, in order to protect his already very large interest in it. She testified to conversations with Mr. Hackney in late November, 1930. At one conversation he said to her, "Don't you think you could get enough people in the house to form a small company? I would be perfectly willing to go in with $100,000 if you can get the other up." I said "Suppose you couldn't, Mr. Hackney, don't you think it would be best for you to do that?" He said, "Naturally I am going to protect myself. I am not going to lose out in it, but I would rather you do that, if you can." She further testified to other later conversations with Mr. Hackney substantially to the same effect. After these negotiations had been undertaken with Mr. Hackney, and after the trustee had sent out circulars, one of them to Mr. Hackney, negotiations for the making of the contract upon which appellant sues were begun.

The question of the sales efforts made by the trustee was discussed, and on December 9 the contract in suit was entered into. It provided that appellant was to sell the property at auction for a commission of 5 per cent. on the gross sales price, he to pay all expenses and costs of advertising and conducting the sale, but it strictly conditioned the payment of the commission as follows: "In order to be entitled to the commission, the property must have been sold to one of your own prospects and not to one with whom the present Trustee of the estate has been negotiating." After the making of the contract and before the auction, appellant proceeded to advertise the property extensively by means of circulars and advertising, and by personal interviews with parties likely to be interested in the property, among them a Mr. Thorp who attended the sale. While appellant had sought to induce Mr. Hackney to buy at the first sale, no effort at all was made by the appellant to procure Mr. Hackney as a purchaser, to induce him to buy at this sale. Mr. Stewart, who handled the matter of the sale, testified to efforts to induce Mr. Thorp to buy, but of none to induce Mr. Hackney. On the contrary, he stated that, when solicited by one of Mr. Hackney's representatives for his opinion on the value of the property upon the statement that Mr. Hackney might be interested in bidding on the sale, he told him that he was not in a position to say what he believed the property was worth. The only conversation he had with Mr. Hackney was with reference to seeing how much Mr.

Hackney would carry on the property, in case it was sold to another.

Stewart further testified that after the sale Hackney told him that he had not negotiated with any one in regard to the purchase of the property. Whether appellant refrained from efforts to induce Hackney to purchase because he thought he would not be entitled to a commission if Hackney bought, or because his experience at the first sale had convinced him that Hackney would not be interested in the purchase, the record does not definitely show, but it permits of no other conclusion than that, as far as appellant is concerned, it was looking to others and not to Hackney to buy, that he was not solicited by it, and that it was looking to him only to aid it in effecting a sale to another through his willingness to renew and carry his debt against the property.

Appellant argues that the contractual terms, on their face harsh and rigorously restrictive enough, have been in the judgment even more rigorously construed and applied. We do not think so. The contract was rigorously restrictive. It was, however, plainly so, and, when the appellant, an experienced auctioneer, entered into it, it must have expected to be bound by its terms. It is plain that the purpose and effect of the contract were to condition the right to recovery of the commission, not upon the crying off of the property, but upon the actual procurement by the auctioneer of a purchaser with whom the trustee had not been dealing, and that the appellant so understood it. Without proof of these facts appellant may not recover. Not only does the producing cause of Hackney's purchase, the fact that he had a large lien to protect, affirmatively appear on the record, but it further appears there, not only that appellant did not procure him to purchase, but that he did not even solicit him. Further, if the evidence did justify the view that the auctioneer, and not his interest in protecting his debt, had induced Hackney to buy, the case for appellant would be no better, for the evidence is without dispute that the trustee had not only been negotiating with Hackney, but that he had been looking to him, because of his interest in the property, as the most probable chance for a purchaser. That the estate has benefited by the money expended and the services of the auctioneer is beyond question. It took employment, however, not upon an implied, but upon an express, contract for a fixed sum. This contract, and not benefits conferred, measures its right to, and the extent

of, its recovery. It is upon this contract that it sues. It has not performed it; it may not recover.

The judgment is affirmed.