In re Phil J. GULLIFER, Sr., f/d/b/a Phil's Auto Company, Debtor.

Louis H. KORNREICH, Esquire, Trustee in Bankruptcy for the Estate of Nelson L. Massey, Jr., Plaintiff,

v.

Phil J. GULLIFER, Sr., Defendant.

Bankruptcy No. BK 78–645K.
Adv. No. 79–34.

United States Bankruptcy Court, D. Maine.

Sept. 23, 1981.

Bernard R. Cratty, Cratty & Cratty, Waterville, Me., for debtor.

Louis H. Kornreich, Goodman, Goodman & Kornreich, Bangor, Me., Trustee.

## MEMORANDUM OPINION

CONRAD K. CYR, Bankruptcy Judge.

The trustee in bankruptcy of the estate of Nelson L. Massey, Jr., Louis H. Korn- reich, Esquire [Kornreich], seeks denial of the discharge of the bankrupt, Phil J. Gulli- fer, Sr. [Gullifer], on the ground that Gulli- fer knowingly and fraudulently made a false oath at the first meeting of creditors by denying "that any criminal proceedings had arisen from the conduct which gave rise to the debt to Nelson Massey, Jr. [Mas- sey]." [1] Gullifer defends by claiming that his testimony was correct to the best of his knowledge and belief; that he did not un- derstand the meaning of "proceedings" and believed that "indictment" meant convic- tion; that the response was immaterial be- cause Kornreich's counsel, then counsel to the judgment creditor, Massey, who posed the question, knew the correct answer; and that the bankrupt estate was in no way misled or prejudiced as a result of the testi- mony.

At the first meeting of creditors, Gullifer was asked by Massey's counsel: "And, in essence, Mr. Massey mortgaged a mobile home and at your request delivered the proceeds to you?" [2] Gullifer responded: "Yes, that's right." [3] Gullifer was then asked: "Did criminal proceedings ever com- mence arising out of that same transac- tion?" [4] Gullifer responded: "No." [5] Gulli- fer was then asked: "There was no criminal indictment against you arising from that transaction?" [6] Gullifer replied: "No." [7]

The evidence reveals that, during July, 1972, Massey, with the assistance of Gulli- fer, obtained financing from Federal Trust Company for the purchase of a mobile home from Gullifer, a mobile home dealer. Mas- sey never acquired possession of the mobile home. Instead, Gullifer retained the mobile home for resale. Massey later agreed to purchase a one-half interest in a Waterville restaurant from Gullifer. A portion of the purchase price was to have been satisfied

1. 'Amended Complaint Stating Objection to Discharge,' filed June 11, 1979.

2. Transcript of First Meeting of Creditors, at 9–10.

3. *Id.* at 10.

4. *Id.*

5. *Id.*

6. *Id.*

7. *Id.*

by Massey's assumption of the Federal Trust Company mobile home loan balance. The restaurant sale was never consummated. Later, Massey brought a civil action against Gullifer and recovered judgment in the amount of $4,641, plus interest and costs. The judgment was sustained on appeal. Gullifer was indicted on June 3, 1975 for allegedly obtaining credit from Federal Trust Company on the false pretense of a sale and purchase of the mobile home to Massey. Following arraignment on July 16, 1975, no further action was taken in these criminal proceedings until the dismissal of the indictment almost four years later. Gullifer was convicted on three other criminal charges brought at the same time, unrelated to the subject transaction with Federal Trust Company.

█ Gullifer is entitled to a discharge unless the court is satisfied that he knowingly and fraudulently made a false oath in or in relation to his bankruptcy proceedings. Bankruptcy Act § 14(c)(1), 11 U.S.C. § 32(c)(1); 18 U.S.C. § 152 (Supp.1981). *See In re Troeder*, 150 F. 710, 711 (1st Cir. 1906). The plaintiff must satisfy the court that there are reasonable grounds for believing that Gullifer made a false oath, Bankruptcy Act § 14(c), *proviso*, 11 U.S.C. § 32(c), *proviso*, Bankr.R. 407; 1A *Collier on Bankruptcy*, ¶ 14.12 (14th ed. 1973), at 1305. The plaintiff must establish each element of common-law perjury by a fair preponderance of the evidence, *In re Mascolo*, 505 F.2d 274, 276 (1st Cir. 1974), whereupon the burden shifts to the bankrupt to come forward with evidence that he has not committed the act alleged, *id*.

There is ample evidence that Gullifer and Massey were involved in a loan transaction which ultimately resulted in the indictment of Gullifer, and that Massey obtained a civil judgment against Gullifer arising out of the same loan transaction. Gullifer's testimony that criminal proceedings, arising out of the same loan transaction as the civil judgment were never commenced, did not conform with the facts. The first meeting of creditors is a proceeding in bankruptcy, *In re Slocum*, 22 F.2d 282, 284 (2d Cir. 1927), and

Gullifer was duly sworn. The evidence establishes that the sworn testimony was given in, and involved a matter material to, these bankruptcy proceedings, *see id.; In re Troeder*, 150 F. 710, 713 (1st Cir. 1906), concerning as it did the dischargeability of the Massey judgment debt. *See* Bankruptcy Act § 17(a)(2), 11 U.S.C. § 35(a)(2).

█ The testimony must not only be proven false and not the result of error, mistake, or inadvertence, *see In re Mascolo*, 505 F.2d 274, 276 (1st Cir. 1974); *In re Steiker*, 380 F.2d 765, 768 (3d Cir. 1967); *In re Slocum, supra*, at 285, it must constitute an "intentional untruth," *In re Troeder*, 150 F. 710, 713 (1st Cir. 1906); *In re Mascolo, supra*, at 276. The record strongly suggests that Gullifer's responses were not intentional misstatements.

█ The substance of the question posed to Gullifer was whether the same cause of action which gave rise to the judgment debt gave rise to an indictment or criminal proceedings. The court finds troublesome the suggestion that Gullifer acquired no better understanding of the criminal process over the four-year period between his indictment and the dismissal of these criminal proceedings. Yet it must be observed that these particular criminal proceedings, but one indictment among eleven returned against him, remained quiescent while he underwent trial and lengthy appeals on three unrelated criminal charges of which he was ultimately convicted. Having extricated himself from the subject criminal charge, it is not implausible that Gullifer may have responded as he did about the Massey transaction at the first meeting of creditors as a means of distinguishing it, because it was ultimately dismissed, from the three unrelated criminal charges of which he was ultimately convicted.

The court agrees with the Ninth Circuit Court of Appeals that a "false oath cannot be justified on the ground that the person to whom it is made knows or should know the truth despite the falsehood," *Keeble v. Sulmeyer*, 290 F.2d 127, 131 (9th Cir. 1961), still it seems almost farfetched that the bankrupt would *knowingly* give false testi-

mony under oath in response to questions put by one who is known by the bankrupt to be in possession of the truth, especially when that interrogator is, and has been throughout, serving as Massey's counsel. The court cannot escape the conclusion that it would have been altogether irrational for Gullifer to perjure himself in response to these questions. The truth was a matter of public record and must have been well known, if not to Massey's counsel who posed the questions, to Massey himself, who was not only Gullifer's judgment creditor and alleged co-conspirator, but also, as has been amply demonstrated, a most determined adversary.

A less implausible explanation exists. During the course of the abrupt testimonial encounter the bankrupt had with Massey's counsel at the first meeting of creditors, which consisted of but five brief questions and answers, the bankrupt, who had had no prior, and has had no subsequent, experience with criminal proceedings, in his then ignorance of the meaning of the technical term "indictment" and his apparent continuing ignorance of the meaning of the term "proceeding," may well have considered that each connoted criminal guilt, which he was anxious to refute in view of the ultimate dismissal of the particular charge about which he was being questioned. It is difficult not to suppose that a lay witness who is asked a question by experienced counsel who is known to the witness to be privy to the correct answer, namely, that criminal proceedings had in fact been commenced, might well attach little significance to the precise meaning, if indeed he knew that meaning, of the technical terms used in framing the question, in his anxiety to establish the fact of most significance to him, namely, that he was never convicted.

The court concludes that the requisite proof of actual intent to defraud is lacking, see In re Mascolo, 505 F.2d 274, 276 (1st Cir. 1974); neither is there evidence of reckless disregard for the truth such as might warrant inferring intent to defraud. See In re Mazzola, 4 B.R. 179, 183–84 (Bkrtcy.D.Mass. 1980). The complaint objecting to discharge must be dismissed.