**In re Harry Martin SCHNOLL, Carol Barbara Schnoll, Debtors.**

**Lawrence KASAKOFF and Gertrude Kasakoff, Plaintiffs,**

**v.**

**Harry Martin SCHNOLL and Carol Barbara Schnoll, Defendants.**

**Bankruptcy No. 82–02736. Adv. No. 82–1523.**

United States Bankruptcy Court, E.D. Wisconsin.

July 25, 1983.

William S. Porter, Milwaukee, Wis., for plaintiffs.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

Lawrence and Gertrude Kasakoff ("Plaintiffs") commenced an action against debtors Harry and Carol Schnoll ("Defendants") seeking a denial of debtors' discharge pursuant to sections 727(a)(3) and 727(a)(4) of the Bankruptcy Code.[1] A trial was held

---

1. 11 U.S.C. § 727 *Discharge.*
(a) The Court shall grant the debtor a discharge, unless—

. . . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from

on May 23, 1983, at which time plaintiff Lawrence Kasakoff appeared in person and by counsel. Defendants did not appear and were not represented by counsel in these proceedings.[2]

Plaintiffs allege several distinct grounds in support of their objection to discharge, including the following: (1) that defendants misrepresented on their schedules the amount of their secured debt; (2) that they omitted any reference to their liability on a guaranty of a student loan from the University of Wisconsin and omitted any reference to an obligation of approximately $3,000.00 due to one Donald Gardner; (3) that they withheld from the trustee copies of their 1981 Federal tax return and the bank statements and cancelled checks of the Food Store, Inc., a business which the defendants owned and operated during 1981 and 1982. In addition, although not specifically alleged in the complaint, plaintiff Lawrence Kasakoff testified at trial that he believed the statement of affairs of the defendants was false in that it reported income of approximately $4,000.00 for 1981 when, according to Mr. Kasakoff, in fact the defendants drew in excess of $15,000.00 from the Food Store, Inc. for their personal expenses.

Plaintiffs are creditors of defendants and on August 12, 1982, obtained a judgment against them in the Circuit Court for Milwaukee County for $29,093.00. Defendants' schedule A–3 lists the total amount of this debt at $31,681.25. The origin of this obligation is as follows: in April of 1981 plaintiffs lent funds to defendants for use in a new business venture known as Food Store, Inc. which defendants had recently started. The business consisted of a butcher shop which defendant Harry Schnoll operated with the assistance of a part-time employee. According to Mr. Kasakoff's testimony, plaintiffs extended this loan primarily out of a sense of familial obligation to defendant Carol Schnoll.[3] Mr. Kasakoff further testified that Harry Schnoll was not a particularly astute businessman and that he had in fact failed in several previous business ventures.

The Food Store, Inc. experienced financial difficulties during 1981 and in the early part of 1982. Defendants were unable to maintain their payments to plaintiff and thereafter plaintiffs secured their judgment against the defendants. On August 12, 1982, the same date that plaintiffs obtained their judgment against defendants for $29,093.00, defendants filed a joint petition in bankruptcy under Chapter 7 of the Bankruptcy Code.

At trial, Mr. Kasakoff acknowledged that he brought this action seeking denial of discharge under § 727, in contrast to an action to declare the debt nondischargeable under § 523(a)(2)(A) because he did not believe he could establish by the appropriate quantum of proof, a case for fraud under § 523(a)(2)(A).[4]

Plaintiffs' first ground for objection to discharge is that defendants misrepresented on their A–2 schedule the amounts due on

---

which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
. . .
   (4) the debtor knowingly and fraudulently, in or in connection with the case:
      (A) made a false oath or account;
      (B) presented or used a false claim;
      (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forebearing to act; or
      (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

**2.** Defendants were formerly represented by Consumer Law Center of Milwaukee, Wisconsin. By an order of this Court, dated January 17, 1983, Consumer Law Center was granted leave to withdraw from further representation of the defendants.

**3.** Plaintiff Gertrude Kasakoff and defendant Carol Schnoll are first cousins.

**4.** Mr. Kasakoff is himself an attorney and is a member of the State Bar of Illinois. Although he retired from full-time practice of law several years ago, he continues to practice on a limited basis. He testified that earlier in his career he had handled bankruptcy matters, including Chapter X work in Chicago.

their first and second mortgages. The first mortgage balance, to Marine National Exchange Bank, was listed at $40,000.00 on the schedules when, in fact, the correct balance was approximately $49,000.00. The balance on the second mortgage, to Thorp Finance, was listed on the schedules at $59,000.00 when, in fact, the correct balance was approximately $35,000.00. Thus, it appears that defendants' schedules understated the first mortgage balance and overstated the second mortgage balance.

A second and related ground advanced by plaintiffs, in support of their objection to discharge, is that defendants omitted any reference in their schedules to two other obligations: their liability on a guaranty of a student loan from the University of Wisconsin and their liability of approximately $3,000.00 to Donald Gardner.

■ Plaintiffs argue that these misstatements and omissions constitute false oaths under § 727(a)(4)(A) of the Bankruptcy Code. However, it is a well established principle that a debtor shall be denied a discharge only when he has acted intentionally and in an effort to defraud. 4 *Collier on Bankruptcy*, (15th Ed.1983), § 727.04 at pages 727–49. *In re Martinez*, 22 B.R. 419, 420 (Bkrtcy.Ct.D.N.M., 1982); *In re Gullifer*, 14 B.R. 183, 185 (Bkrtcy.Ct.D.Maine, 1981). *See also, In re Gonday*, 27 B.R. 428, 433 (Bkrtcy.M.D.La.1983).

■ The record is devoid of any evidence which suggests that the errors in defendants' schedules have been committed intentionally. Regarding the discrepancies in defendants' first and second mortgage balances, there does not appear to be any underlying reason or motive for such errors. Mr. Louis R. Jones, the trustee in bankruptcy, testified at the trial that he claimed no interest in the home of the debtors. He stated that whatever equity there might have been in this home had been fully absorbed by the exemption and that the general unsecured creditors would obtain no benefit from this particular asset. Mr. Kasakoff also stated that had he been the trustee, he "would have done the same thing" as was done by Mr. Jones. Similarly, the two omitted debts appear to stem not from any purposeful design to defraud but rather from oversight. The defendants could not in any manner have benefitted from making these errors. The omissions of the educational loan and the debt to Mr. Gardner could only prejudice defendants, since unscheduled debts are nondischargeable under § 523(a)(3) of the Code, in the absence of actual knowledge of the bankruptcy proceedings by the unsecured creditors.

■ As a third ground in support for their objection to discharge, plaintiffs argue that defendants withheld from the trustee copies of their 1981 Federal income tax return and the bank statements and cancelled checks from the Food Store, Inc. The trustee testified that, shortly after the § 341 hearing, he wrote to defendants requesting copies of the tax return and of the bank statements and cancelled checks. By letter dated November 9, 1982, defendants responded to trustee that they did not have any cancelled checks, but suggested that the relevant information could be obtained from "the bank" (First Wisconsin National Bank-Bayside). Defendants did not provide the trustee with copies of their tax return. There was apparently no further communication between the trustee and the defendants, either by phone or by correspondence, after that point.

The trustee further testified that, based upon his personal examination of defendants at the § 341 hearing and his own independent investigation, he had satisfied himself that this was a no asset case.[5] The Court finds the trustee's testimony to be particularly significant. While defendants could have been more cooperative with the trustee, it does not appear from the record that there was any deliberate attempt to withhold information in an effort to defraud the estate. Defendants responded to the trustee by virtue of their letter of November 9, 1982. In addition, defendants supplied to the Court, as part of their answer to the complaint, copies of their 1981 Federal and state tax returns.

---

5. A trustee's "Report of No Distribution" was filed by the trustee on November 11, 1982.

■ As a final ground in support of plaintiffs' objection to discharge, although not specifically pleaded in the complaint, Mr. Kasakoff testified that, in his judgment, the statement of affairs was false in reporting income of approximately $4,000.00 for the year 1981 when in fact, according to Mr. Kasakoff, defendants drew in excess of $15,000.00 from the Food Store, Inc. for their personal living expenses. Mr. Kasakoff contends that these funds withdrawn from the corporation should have been reflected as income on the statement of affairs.

The Court does not find this argument persuasive. In response to a question by the Court, Mr. Kasakoff acknowledged that the monies which defendants withdrew from the Food Store, Inc. for their own personal use came from the funds which plaintiffs had lent to the business. This loan was reflected accurately in the schedules in the sum of $31,681.25. Thus, the source of these funds was accounted for. The mere withdrawal of funds from the business operation by defendants is not indicative of fraud; it simply demonstrated poor or sloppy business practice. While defendants' bankruptcy schedules could have been drafted more precisely in explaining what funds were withdrawn from the business for personal purposes, the evidence does not establish that this omission constituted a knowing and fraudulent attempt to falsify the schedules.

■ This Court is of the view that the evidence presented by plaintiff is not sufficient to warrant the denial of defendants' discharge. Under Rule 407, Rules of Bankruptcy Procedure, a plaintiff has the burden "of proving the facts essential to his objection." It is true that in some instances, the burden of production may shift to the debtor, such as where there are difficulties in "proving the non-existence of a fact and of establishing a fact as to which the evidence is likely to be more accessible to the bankrupt than to the objector." *See,* Advisory Committee Notes, Rule 407, Rules of Bankruptcy Procedure. Nevertheless, the ultimate burden of proof lies with the plaintiff. *In re Martin,* 698 F.2d 883, 887 (7th Cir. 1983). In the instant case, this Court does not believe that such unusual circumstances exist as would require the burden of going forward to shift to defendants. Although defendants did not appear at trial and no testimony was presented in their behalf, the evidence adduced by plaintiffs did not establish a *prima facie* case for denial of discharge.

■ The right to a discharge is statutory and does not lie within the discretion of the Court. Thus, a discharge must be granted, absent specific proof sufficient to establish one of the statutory grounds for denial of discharge. *In re Lind,* 6 B.R. 374, 377 (Bkrtcy.Ct.S.D.Texas, 1980). Moreover, § 727 must be construed liberally in favor of the debtor and strictly against the objecting creditor. *In re Rubin,* 12 B.R. 436, 440 (Bkrtcy.Ct.S.D.N.Y.1981); *In re Terkel,* 7 B.R. 801 (Bkrtcy.Ct.S.D.Fla., 1980). This Court is in accord with the opinion of Judge Gassen in the case of *In re Terkel,* 7 B.R. 801 (Bkrtcy.Ct.S.D.Fla., 1980). The Court declined to deny a debtor's discharge where the debtor's failure to list an asset was the result of carelessness and stated, 7 B.R. at 804:

"This Court does not condone carelessness in the preparation of schedules or in complying with all requirements, but the denial of a discharge is a step not to be lightly taken, and one not merited here."

Accordingly, under all of the facts and circumstances related herein, an order shall be entered dismissing plaintiffs' complaint. This decision shall stand as and for findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.