MORRIS PLAN INDUSTRIAL BANK v. FINN.

No. 321.

Circuit Court of Appeals, Second Circuit.

May 28, 1945.

Milton Turk, of New York City, for appellant.

Henry W. Parker, of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

PER CURIAM.

This is an appeal from an order in bankruptcy which reversed the order of a referee who had granted the bankrupt his discharge. The specifications of objection were drawn under § 14, sub. c(1), 11 U.S.C.A. § 32 sub. c(1); i. e. that he had committed an offence punishable by imprisonment under the Bankruptcy Act. Two "offences" were charged: (1) That

he had concealed $187.50 in War Bonds, § 29, sub. b(1), 11 U.S.C.A. § 52, sub. b (1); (2) that he had made a false statement as to them in his petition and schedules, § 29, sub. b(2). The only evidence offered in support of these was the bankrupt's testimony, from which it appeared that, out of his weekly wages of $50, there had been deducted for about a year $5 a week, which was put in war bonds in the name of himself and his wife. He filed a voluntary petition on June 9, 1944, in which these bonds did not appear, and it was his failure to enter them that was the basis of the objections. His wife cashed the bonds after June 9th and gave him $110 of the proceeds, out of which he reimbursed himself for $30 which he had already paid as the filing fee in bankruptcy, and $80 he paid to his attorney. The rest his wife paid for their daughter's appendectomy and incidental expenses. The referee found that, when the bankrupt filed his petition, his wife had possession of the bonds, which was correct, but also that his wife already "had cashed them," which was "clearly erroneous," being contrary to the only testimony. He also found that the wife "could have refused to convert the bonds into cash or allow the bankrupt control or custody of them," which was perhaps literally true; but did not involve as a consequence that the bankrupt had no interest in the bonds which should have appeared in the schedules. Finally, as a conclusion of law he found that the bankrupt did not "knowingly and fraudulently" omit the bonds from his schedules. On appeal to the district judge, he reversed the order and denied the discharge upon the ground that, although the bankrupt had not made any false statement "fraudulently," he had "knowingly" omitted the bonds, and that was enough; relying upon our decision in In Re Steinberg, 2 Cir., 143 F.2d 942.

█ We held in 1907—nine years after the act went in effect—that the crime of false swearing under § 29, sub. b(2), was the same as perjury, although the punishment was different. Wechsler v. United States, 2 Cir., 158 F. 579. That had been already indicated obiter by the First Circuit in Troeder v. Lorsch, 1 Cir., 150 F. 710, 713; and the Seventh so decided in Epstein v. United States, 7 Cir., 196 F. 354. We reasserted the doctrine in Kahn v. United States, 2 Cir., 214 F. 54, although we held that, unlike perjury, only

one witness was necessary; and the Eighth also implied that the crimes were the same in Rosenthal v. United States, 8 Cir., 248 F. 684. These—except Troeder v. Lorsch, supra,—were all criminal prosecutions, and the act has been repeatedly amended, since they were decided, without any change in § 29, sub. b(2), except to increase the penalty and change the original phrase, "any proceeding in bankruptcy" to "any proceeding under this Act." These amendments, leaving the adverbial phrase, "knowingly and fraudulently," unchanged, are persuasive evidence that the judicial construction put upon the language accorded with the intent of Congress. Moreover, we have several times adopted the same construction—as was indeed inevitable—when the question arose upon a discharge. Possibly In Re Zoffer, 2 Cir., 211 F. 936 should not be taken as a ruling; but In Re Slocum, 2 Cir., 22 F.2d 282, 285, In Re Marshall, 2 Cir., 47 F.2d 209, and In Re Steinberg, supra (2 Cir., 143 F.2d 942), were all decisions. We regard it therefore as settled doctrine that, if a bankrupt consciously swears to what he knows to be untrue, it makes no difference that he does not mean by so doing to injure his creditors. They are entitled to judge for themselves from a true account of the facts, what will benefit, and what will prejudice, them. As an illustration, it would bar a bankrupt's discharge if he deliberately omitted to schedule such property as he honestly thought to be exempt, although of course he could not intend by that to defraud his creditors; it would be enough that the schedules called upon him to include exempt property, if he knew that they did.

█ It appears to us that the district judge was in error in his use of this doctrine in the case at bar. If the bankrupt were being tried for perjury, it would indeed be no defence to prove that, when he falsely swore that the bonds were not his property, he did not suppose that that statement would prejudice his creditors. On the other hand, it would be a defence to prove that he did not suppose that the answers which he put in his schedules were in fact untrue: i. e. that, when the schedules asked him to include all his property, they asked him to include any interest he had in the bonds. By requiring him to include "property," they demanded of him a judgment which comprised a legal element, and that demanded nothing more than an honest effort to understand what

the question meant. We cannot tell from this record whether the referee meant to find that the bankrupt thought any interest he had in the bonds was not such "property" as the schedules required him to include; or whether he thought they were such property, but that, as the creditors had no right to the proceeds, the omission could not "defraud" them. It did not answer that question merely to make a "conclusion of law" that the bankrupt did not "knowingly and fraudulently" omit the bonds. The testimony is such that the referee's finding would be final upon this, the only relevant issue, for the answer depends altogether on the impression of honesty which the bankrupt made upon the referee. Hence the case must go back to the referee for further findings; in making which he will remember that the bankrupt will have the burden of proof, by virtue of the proviso to § 14(c).

Order reversed; cause remanded for further findings by the referee.