In re Robert S. BUJAK, Debtor.

Kenneth LEWIS and Louise R. Lewis, Plaintiffs,

v.

Robert S. BUJAK, Defendant.

David B. BAUG, Plaintiff,

v.

Robert S. BUJAK, Defendant.

Bankruptcy No. 87–20547.
Adv. Nos. 87–2081A, 87–2080A.

United States Bankruptcy Court,
W.D. New York.

May 23, 1988.

Fix, Spindelman, Turk, Himelein & Shukoff by Igor Shukoff, Rochester, N.Y., for debtor.

Reynolds & Henehan by J. Thomas Reynolds, Avon, N.Y., for Kenneth and Louise Lewis.

UAW–GM Legal Services Plan by John A. Suda, Rochester, N.Y., for David B. Baug.

EDWARD D. HAYES, Bankruptcy Judge.

## MEMORANDUM AND DECISION

This case was commenced on April 22, 1987 by the filing of a voluntary petition in Chapter 7. A first meeting of creditors was held on July 6, 1987 pursuant to 11 U.S.C. § 341. On July 7, 1987, creditors, Plaintiffs herein, moved to examine the Debtor and extend the time within which to object to the Debtor's discharge. The creditors had each paid money in advance to the Debtor for the performance of home improvements which were not completed.

The Motions to examine and extend time were granted over the Debtor's objection on July 20, 1987, and the Debtor was deposed on August 6, 1987. Thereafter, the creditors commenced these Adversary Proceedings objecting to the Debtor's discharge.

The Plaintiffs first allege that a discharge should be denied the Debtor for his having failed to satisfactorily explain the loss of assets. 11 U.S.C. § 727(a)(5). Under section 727(a)(5), the burden of going forward with evidence of an unexplained loss is on the objectant. 4 Collier on Bankruptcy ¶ 727.08 (15th Ed.1986). Here, the burden has been met by a showing that the Debtor reported in his petition far less income for 1985 and 1986 than he later testified to having received.

In his petition, the Debtor listed income for each of the two years preceding bankruptcy as $10,000.00. (Statement of Financial Affairs at 2d). In later testimony, however, the Debtor stated that his earnings were between $80,000.00 and $100,-000.00 for each of the years in question. (Transcript at 18; Plaintiff's Exhibit # 2 at 30). The Court concludes that the variance was inadvertent and harmless. Testimony adduced at trial amply supports that the Debtor reported net income in his petition while testifying to gross income under supplemental examination. (Transcript at 38–40, 48, 50). Accordingly, the loss of assets was illusory and has been satisfactorily explained.

■ The Debtor is next alleged to have knowingly and fraudulently made false oaths in connection with the case, warranting a denial of discharge under 11 U.S.C. § 727(a)(4)(A). The watchwords of a section 727(a)(4) violation are intentionality and materiality. The rule in this Circuit regarding the swearing of false oaths in bankruptcy has been stated as follows:

> [T]he words of the statute requiring that the testimony be given 'knowingly and fraudulently' mean no more than an intentional untruth in a matter material to the issue which is itself material.

*In re Robinson,* 506 F.2d 1184, 1187 (2nd Cir.1974) (citation omitted). Intentionality may be inferred from the facts, 4 Collier on Bankruptcy ¶ 727.04 (15th Ed.1986), and "materiality does not require a showing that the creditors were prejudiced...." *Robinson,* 506 F.2d at 1188. The false oath provision is tantamount to a perjury statute, requiring only that the Debtor have intentionally sworn falsely in his schedules or under examination. *Id.*

The first false oath charged involves the discrepancy between income reported by the Debtor in his petition and that which he later testified to. The Court notes that the Statement of Financial Affairs at 2d asks, "What amount of income have you received from your trade or profession during each of the 2 calendar years preceding the filing of the original petition herein?" The question does not specify whether a gross or net income figure is desired in response. As discussed above, the Debtor responded to the inquiry of the petition with an accurate net income figure, but responded to a similar question under examination with a gross income figure. While the figures were at variance, neither was false.

■ The second false oath charged involves the Debtor having sold tools and equipment during the year preceding bankruptcy despite having denied transferring any property in his Statement of Financial Affairs at 12b. In fact, testimony by the Debtor demonstrates that during the twelve months preceding bankruptcy tools and equipment were sold out of the ordinary course of business. (Transcript at 12–15, 17; Plaintiff's Exhibit # 2 at 45–47).

The Court in *Ittelman v. Hochman,* 123 F.2d 723, 724 (2nd Cir.1941), stated that questions posed involving the transfer of property required, at the very least, disclosure of transfers, such as the one at issue, deviating from the normal course of the Debtor's financial affairs. Here, assets were sold for $1,500.00 which had been purchased just months earlier for $8,000.00. The sale constituted a transfer out of the ordinary course which raised the spectre of fraudulent conveyance and, being material to the estate, should have been disclosed. By affirmatively denying any such transfer, the Debtor swore falsely

**32**

under oath within the meaning of 11 U.S.C. § 727(a)(4)(A).

■ The Debtor is also charged with swearing falsely that he had retained books and records relating to his financial affairs (Statement of Financial Affairs at 54a), whereas subsequent testimony showed that whatever scant records had been kept were routinely discarded when the transaction to which they related was complete. (Transcript at 41). The Debtor further swore in his Statement of Financial Affairs at 2e that he had received no income during the two years prior to filing other than as a self-employed carpenter and contractor. However, testimony later elicited of the Debtor indicates that during the relevant time period he had received $5,000.00 from PJ's, a painting subcontractor, and $5,000.00 from Gatsby's, a nightclub. Finally, the Debtor testified under oath that he had neither been associated with, nor received income from, Viking Construction Company during the two years preceding bankruptcy. (Plaintiff's Exhibit # 2 at 58). Nevertheless, a home improvement contract on Viking Construction letterhead was entered into between the Debtor and Plaintiffs Lewis on September 14, 1985, under which payment of $11,000.00 was made to the Debtor via the Lewis' check posted October 29, 1985. (Plaintiff's Exhibit # 4).

In each instance abovementioned the deceit was patent, being either intentional or in reckless disregard of the truth. It is not entirely clear in what way the misstatements and omissions were material to a determination of the Debtor's financial circumstances and business transactions. Yet, "if a bankrupt consciously swears to what he knows to be untrue, it makes no difference that he does not mean by so doing to injure his creditors. They are entitled to judge for themselves from a true account of the facts, what will benefit, and what will prejudice them." *Morris Plan Industrial Bank v. Finn*, 149 F.2d 591, 592 (2nd Cir.1945). The Debtor's attempts to thwart his creditors from accurately evaluating his pre-bankruptcy dealings are too numerous and blatant to be gainsaid. Accordingly, he has run afoul of 11 U.S.C. § 727(a)(4)(A).

■ As a final ground for the denial of discharge, the Plaintiffs assert that the Debtor has failed to keep records from which his financial status and business dealings may be ascertained as required by 11 U.S.C. § 727(a)(3). *In re Underhill*, 82 F.2d 258 (2nd Cir.1936), a case decided by the Second Circuit under the Bankruptcy Act, established a standard for record keeping which still applies.

Intent to conceal the financial condition is no longer a necessary element to support an objection to a discharge for failure to keep books. (citations omitted). The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to the failure to which the act applies. (citation omitted). While it is always open to the bankrupt to affirmatively justify his failure to keep records, each case must stand upon its own facts with the inquiry always as to whether the bankrupt has sustained this burden of justification which the statute places upon him for his failure to keep adequate records. Where the bankrupt was involved in many transactions of an extensive character, a substantially accurate and complete record of his affairs is a prerequisite to his discharge.

*Underhill*, 82 F.2d at 259–60.

In this case the Debtor, a building contractor and carpenter, began working as a self-employed tradesman late in the Summer of 1985, doing business as Viking Construction. (Transcript at 31). Viking Construction was a partnership in which the Debtor and a Mr. Paul Johnson were associated. The Debtor testified that Mr. Johnson was charged with keeping the company's books. (Transcript at 32).

The Debtor's association with Mr. Johnson was short-lived, however, as the part-

ners split up within three months of commencing work together. Following dissolution of the partnership, the Debtor continued doing business under the name Viking Construction as a sole proprietor. (Transcript at 33). The Debtor testified that he had never before run a small business and had no experience in bookkeeping and accounting matters. (Transcript at 32–33). Even so, the Debtor managed to keep the business afloat until the Spring of 1987 when the weight of $87,617.00 in debt prompted his bankruptcy filing.

As discussed above, the Debtor was ordered on July 29, 1987 to appear at a supplemental examination and produce evidence of his finances which, according to the petition, had been retained. At the examination, however, the Debtor produced only three monthly bank statements. Of these, one related to the month preceding bankruptcy and two related to the months immediately succeeding bankruptcy. No meaningful financial record or account was produced. No income tax record was submitted since the Debtor had failed to file returns for the two years preceding bankruptcy. No bills or invoices were produced, and neither were any work contracts offered, even though the Debtor testified that such contracts were routinely reduced to writing. (Plaintiff's Exhibit # 2 at 5, 22, 23).

As in *Baker v. Trachman,* 244 F.2d 18 (2nd Cir.1957), the Debtor hired labor, billed jobs, purchased materials and performed roughly the same function as any other building contractor. As in *Baker,* evidence and testimony indicate that documentation was generated from the transactions in which the Debtor was involved. The Debtor has failed to produce any record of these transactions, however, and failed to justify their absence or show that in his particular business they were not used. While the Debtor's obvious lack of business acumen dictates that he not be held to a sophisticated or extensive bookkeeping regime, still a modicum of documentary evidence relating to his financial condition is reasonably expected.

The Debtor performed contracts in the two years preceding bankruptcy which he estimated were worth between $180,000.00 and $200,000.00. During that same time he accumulated sizable debt, of which $87,-617.00 is now scheduled to be discharged in bankruptcy. Recognizing that objections to discharge must be construed strictly against the objectant, *In re Adlman,* 541 F.2d 999, 1003 (2nd Cir.1976), the Court is compelled, nevertheless, to conclude that the Debtor's complete failure to keep records in this case was not justified under all of the circumstances.

Accordingly, the Plaintiffs' request for relief is granted inasmuch as it relates to 11 U.S.C. § 727(a)(3); granted inasmuch as it relates to 11 U.S.C. § 727(a)(4)(A); denied inasmuch as it relates to 11 U.S.C. § 727(a)(5), and it is so ordered.

### ORDER

At Rochester, New York in the said District on the 23 day of May, 1988.

In accordance with the attached Findings of Fact and Conclusions of Law, it is hereby

ORDERED that the Debtor be denied a discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(3), (4)(A).