**In re Jerome Lee HARLOW, Donna Porter Harlow, Debtors.**

**George A. McLEAN, Jr., Trustee, Plaintiff,**

**v.**

**Jerome Lee HARLOW, Defendant.**

**Bankruptcy No. 7–89–00036. Adv. No. 7–89–0076.**

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

Oct. 20, 1989.

George A. McLean, Jr., Roanoke, Va., Trustee.

Daniel L. Crandall, Roanoke, Va., for debtor.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

The issue before this Court involves an objection by the trustee, George A. McLean, Jr., (herein Trustee) to the discharge of Jerome Lee Harlow (herein Harlow). The statutory basis for objection to discharge is 11 U.S.C. § 727(a)(4)(A). The Trustee alleges that Harlow failed to disclose a transfer of assets in responding to question 12(b) of the statement of affairs filed in the case, failed to disclose unencumbered assets in his schedules and gave false testimony at his section 341 meeting concerning the sale of assets prepetition. Trial was held in this case on September 27, 1989. The following constitutes this Courts findings of fact and rulings of law.

### Facts

On December 28, 1988, Harlow sold a 1981 John Deere 310(A) backhoe to David W. Jarrett for a purchase price of $13,-500.00. The transaction is memorialized in a handwritten bill of sale executed by Harlow and a cashier's check made payable to Harlow in the amount of $13,500.00. *See,* Exhibit 1 which the parties stipulated. At trial, the parties stipulated that Harlow had signed his schedules and statement of affairs for the filing of his Chapter 7 bankruptcy petition on December 27, 1988.

As required by law, the petition, schedules, and statement of affairs were signed by Harlow under penalty of perjury. Question 12 in the statement of affairs involves transfers of property. It is divided into a subparagraph (a) which relates to transfers in the form of gifts to family members or charitable donations within the year immediately preceding the filing of the original petition. Paragraph (b) states as follows:

Have you made any other transfer, absolute or for the purpose of security, or any other disposition, of real or tangible personal property during the year immediately preceding the filing of the original petition herein?

The typed response to question 12 in its entirety is "no." The debtor did not specifically answer question 12(a) and then 12(b). Rather, he simply answered "no" to question 12 concerning transfers of property. There is no other disclosure in the statement of affairs or the schedules which would lead the trustee or creditors to have knowledge from the face of the documents that Harlow had owned a backhoe immediately prepetition or had sold that backhoe immediately prior to the filing of his petition. The Chapter 7 case was filed on January 6, 1989.

The parties also stipulated that Harlow had failed to disclose in the schedules his ownership of certain surveying equipment. In addition, Harlow failed to list his father, Jerome Harlow, as a creditor.

The section 341 meeting of creditors was held in Abingdon, Virginia, on February 9, 1989. The Trustee examined Harlow as to his assets and liabilities and inquired as to whether the schedules and statement of affairs revealed all of Harlow's assets. Harlow's response was in the affirmative. The Trustee then confronted Harlow with information concerning his sale of the backhoe to David W. Jarrett. When confronted, Harlow admitted that the transaction had taken place. He gave no explanation at the section 341 meeting as to why he had failed to disclose the transaction in answering question 12(b) of the statement of affairs. Harlow also admitted at the section 341 meeting that he owned surveying equipment which had not been disclosed in the schedules.

At trial of this adversary proceeding, Harlow testified that the backhoe was subject to the lien of John Deere and that in November 1988, he had fallen behind in enough payments on the backhoe that John Deere was threatening to repossess the property. The evidence also showed that Harlow's father, Jerome Harlow, had been making certain payments for him and that

Harlow owed his father a great deal of money. When Harlow told his father that John Deere was threatening to repossess the backhoe, he and his father agreed that it would be better for Jerome Harlow to pay off the obligation to John Deere in the amount of approximately $7,300.00 so that Harlow could sell the backhoe and obtain its fair market value. The agreement between Harlow and his father was that his father would be reimbursed for the payoff of the John Deere tractor and would receive the balance of any sales proceeds over and above the payoff to John Deere to be applied toward other unsecured debt Harlow owed his father. Harlow's father borrowed the money from a bank and paid off John Deere. Thereafter, Harlow moved the backhoe to his father's property which fronted on a main road and put a "for sale" sign on the backhoe. Harlow showed the backhoe to prospective purchasers and prior to its sale used the backhoe for his work when it was needed. Harlow never executed a bill of sale to his father for the backhoe.

On December 28, 1989, one day after Harlow had signed his schedules and statement of affairs for the filing of his Chapter 7 petition, Harlow sold the backhoe to Jarrett for $13,500.00. Harlow endorsed the cashiers check made payable to him to his father who used a portion of the sales proceeds to pay off the bank loan which he had obtained to redeem the backhoe from John Deere. Harlow's father applied the balance of the proceeds, a sum totaling approximately $5,800.00 to the amounts which Harlow owed him.

Harlow admitted from the witness stand that he had reviewed the schedules and statement of affairs before he signed them. His explanation for failure to disclose the transfer of the backhoe was that after his father provided the funds for him to redeem the backhoe from John Deere he just did not consider the backhoe to be his anymore; rather, he considered it to be his father's. With respect to the surveying equipment, builder's level and tripod, Harlow explained that he simply forgot about these two items in listing his assets.

The evidence also revealed that Harlow is a high school graduate, had been employed by the railroad for approximately ten (10) years, and had been in business for himself prior to the filing of his petition for relief. Further, the schedules and statement of affairs reveal that Harlow owned real estate and had bought and sold equipment and other personal property in addition to the backhoe. There is no evidence that Harlow disclosed his sale of the backhoe to his bankruptcy attorney or sought any legal advice concerning the transaction as it related to his impending bankruptcy proceeding.

### Law

The Trustee proceeds under 11 U.S.C. § 727(a)(4)(A) which provides as follows:

(a) The court shall grant the debtor a discharge, unless—

(4) The debtor knowingly and fraudulently in or in connection with the case—

(A) Made a false oath or account; ...

There is no question in this case that Harlow made a false oath in responding to question 12(b) in the negative. Harlow also gave false oath at the section 341 meeting and only corrected his false statement when he was confronted with information by the Trustee. With respect to the backhoe, Harlow's excuse is that he did not consider the backhoe to be his anymore after his father provided the funds for its redemption from John Deere in November 1988. With respect to the builder's level and tripod, Harlow's only excuse is that he just forgot about listing these assets.

The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Code. *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984). If the debtor knows the truth and, nonetheless, willfully and intentionally swears to what is false, his discharge can be barred. *In re Cline*, 48 B.R. 581 (Bankr.E.D.Tenn.1985).

It is essential that the false oath relates to a material matter. *In re Scales*, 8 B.R. 110 (Bankr.E.D.Va.1980). The subject matter of a false oath is material and

warrants a denial of discharge if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property. *Chalik*, at 616. In the case at bar, the proper disclosure under question 12(b) would have alerted the Trustee to the transfer and he would have had an opportunity to assess the exercise of his avoidance powers for the benefit of the creditors of the estate. Further, it is clear there was equity in the property which was derived from the sale by Harlow to Jarrett. The payoff on the backhoe was $7,306.19. The gross sales proceeds was $13,500.00. Thus, the failure to disclose was a material matter.

The statute requires that the debtor "knowingly and fraudulently" make the false oath. The debtor's intention may be inferred from the facts of the case. *In re Bujak*, 86 B.R. 30 (Bankr.W.D.N.Y. 1988). In the case at bar, this Court finds that the following facts demonstrate the debtor's intention: (1) The debtor closed the transaction one day after he had signed his schedules and statement of affairs. From the evidence at trial, it is clear that the debtor had consulted his bankruptcy attorney several times prior to his execution of the schedules and statement of affairs. Further, he had reviewed the schedules and statement of affairs. Yet, he never disclosed the transaction to his attorney or asked for advice with respect to it. (2) Harlow signed the bill of sale and accepted a cashiers check in the amount of $13,000.00 payable to him. He then endorsed the check to his father. Yet, in testifying that he considered the backhoe to be his father's after the backhoe was redeemed in November of 1988, he never executed a bill of sale to his father. It is clear that Harlow and his father had decided that the sale of the backhoe was a way to permit Harlow to pay his father back for significant sums of money advanced. (3) Harlow's father testified at trial that even though he had received the $13,500.00, he was still owed money by his son. Yet, Harlow never listed his father as a creditor in the bankruptcy proceeding. The inference that this Court draws from all of this

is that Harlow did not want the transaction known because he wanted to prefer his father over other creditors of the estate. (4) Harlow owned real estate as of the date of the filing of the petition. Further, he had been in business for himself, had worked for the railroad for ten (10) years, and is a high school graduate. Therefore, Harlow's level of education and his experience indicate an ability to understand the concept of ownership and an ability to appreciate the content of the schedules and statement of affairs which he signed.

It is clear to this Court that Harlow believed that it was only right that his father should receive the proceeds from the sale of the backhoe so that his father could be paid back for sums which had been advanced. Harlow rationalizes his conduct by interpreting the concept of ownership in order to achieve the result which he desires i.e. to prefer his father over other creditors. This Court has been unable to find any reported case which would sanction the transaction from a preference point of view or would form a legal excuse to remove the debtor from an exception to his discharge under 11 U.S.C. § 727(a)(4)(A). This Court finds that Harlow knew what he was doing and that he intended to conceal the transaction in order to benefit his father.

Bankruptcy Rule 4005 places the ultimate burden of persuasion on the plaintiff in discharge proceedings. However, it provides no guidance as to the standard of proof necessary to establish an exception to discharge. The standard of proof for an exception to the dischargeability of a particular debt under 11 U.S.C. § 523 is a preponderance of the evidence. *Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir. 1988). This standard of proof has been extended to section 727 complaints to deny discharge. *In re Parker*, 85 B.R. 384, 387 (Bankr.E.D.Va.1988). This Court sees no reason to distinguish between the standard of proof for section 523 dischargeability issues and section 727 discharges. Accordingly, the standard of proof is a preponderance of the evidence. This Court finds from all of the facts presented that the

Trustee has established an exception to discharge under 11 U.S.C. § 727(a)(4)(A).

An order will be entered to implement this memorandum opinion.