**In re Alkesh SHAH, Debtor.**

**CORNING VITRO CORPORATION, Plaintiff,**

v.

**Alkesh SHAH, Defendant.**

**Bankruptcy No. 892–87059–478. Adv. No. 893–8298–478.**

United States Bankruptcy Court, E.D. New York.

June 29, 1994.

Traub, Bonacquist & Fox by Susan F. Balaschak, New York City, for plaintiff.

Abraham & Silver by Jaenam J. Coe, New York City, for debtor.

## MEMORANDUM DECISION PURSUANT TO § 727(a)(4)(A) OF THE BANKRUPTCY CODE

DOROTHY EISENBERG, Bankruptcy Judge.

Corning Vitro Corp. ("Corning" or the "Plaintiff"), seeks to deny the Debtor a discharge pursuant to § 727(a)(4)(A) and (A)(5) of the Bankruptcy Code; or, in the alternative, seeks to except from discharge the Debtor's debt to Corning pursuant to Bankruptcy Code § 523(a)(2)(A). After trial on the merits, this Court finds for the Plaintiff. The Debtor will be denied a discharge pursuant to Section 727(a)(4)(A).

## STATEMENT OF FACTS

On December 18, 1992, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (hereinafter the "Petition"). The Debtor signed the petition under penalty of perjury. The petition contains a schedule of assets and liabilities and a statement of financial affairs. A review of the Petition that was filed with the Court and never amended reflects that he had $500 in personal property assets and unsecured creditors totalling $807,693.63 in debt. All of his assets were claimed as exempt. Many of the creditors listed by the Debtor in Schedule "F" holding unsecured non-priority claims are creditors as a result of the Debtor's interest in a business called V & V Associates, Inc. (hereinafter "V & V"). Nowhere in the Petition is V & V mentioned or referred to. Question No. 12 of Schedule "B"—*Personal Property*—inquires as to the Debtor's interest as a shareholder in any incorporated or unincorporated business. Although the Debtor was the sole shareholder of V & V, he falsely indicated "none" to Question No. 12. The Debtor was the president and sole shareholder of V & V for at least a six (6) year period prior to the Petition date. The Debtor conducted his business until approximately one (1) month prior to the filing of the Petition and was familiar with its affairs. Although not operating, V & V was still in existence as of the Petition date, and had assets and liabilities. The assets of V & V may have been encumbered, but the Debtor still maintained stock ownership in V & V which he failed to schedule.

Schedule "A"—*Real Property*—asks the Debtor to describe and locate property in which the Debtor had an interest. The response to this question was "none", even though the record reflects that the Debtor had an interest in a mortgage in real property as of the date of filing the Petition. Schedule "A" further provides room for the Debtor to indicate the current market value of the Debtor's interest in real property, but this was left blank. The Debtor testified that he knew this mortgage was in his name and had in fact attempted to collect upon it, but since he believed it was not a collectible

debt, he failed to list this asset. His response to Schedule "A" was false.

On the Statement of Financial Affairs, Question No. 1, income from employment or operation of business, the Debtor indicated that the gross amount of income the Debtor received from employment, trade or profession, or from operation of the Debtor's business from the beginning of the calendar year to the Petition date for the year 1991 was $6,000 and for the year 1990 was $6,000. Yet, at his examination at a Section 341 meeting, when questioned, he answered that his gross income was $8,000 per year. See Plaintiff's Exhibit "2".

Question "11" in the Statement of Financial Affairs requests the Debtor to list all financial accounts and instruments held in the name of the Debtor or for the benefit of the Debtor which were closed, sold, or otherwise transferred within one (1) year immediately preceding the commencement of this case. It directed that the Debtor include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. The Debtor responded that he had none. This statement was false. The Debtor actually had three accounts that were still open as of the Petition date, one of which, the Merrill Lynch Cash Management Account, a personal account, was an active account throughout the year preceding the filing of this petition. See Plaintiff's Exhibit "4". This account had substantial sums passing through it. The Debtor used this account to lend money to V & V, and V & V repaid these loans to the Debtor using this account. The Debtor wrote the checks for V & V, and the Merrill Lynch account. Even though the accounts may have been of minimal value as of the Petition date, the Debtor was obligated to reveal these accounts. This information is necessary in order to enable the Trustee or any creditor or party-in-interest to inquire into those accounts to determine whether there may have been any preferential or fraudulent conveyances pursuant to the Bankruptcy Code. Falsely indicating that there were none closed the opportunity of inquiry to any party relying on this false statement, without further inquiry or investigation. Not only was the statement of affairs incorrect, but the Debtor's schedule of assets did not reflect any open accounts, even with their minimal sums.

The Statement of Affairs, Question No. 16, further requests that the Debtor indicate, if the Debtor is an individual, the names and addresses of all businesses in which the Debtor was an officer, director, partner or managing executive of a corporation, partnership, sole proprietorship or was a self-employed professional within the two years immediately preceding the commencement of the case. The Debtor falsely answered "none", although it is clear that he was the sole officer and shareholder of V & V up until and subsequent to the Petition date.

Corning is a creditor listed in the Debtor's Petition as being a business debt. Corning's business debt was personally guaranteed by the Debtor.

The Debtor has a college degree from Cornell University and is enrolled at and about to graduate from Columbia University in its M.B.A. Program. He had applied to and was accepted at Columbia Law School, but indicates he does not plan on attending. It is clear to this Court that the Debtor is extremely well educated, fully understands English and was able to read and understand the questions requiring responses when he prepared and signed the Petition.

In response to questioning as to what happened to V & V and its assets, the Debtor had testified under oath that the secured creditor, Habib Bank (the "Bank") had seized and removed its inventory and equipment. At trial, the Debtor sought to justify his statement that the assets of the corporation had been seized by the Bank, which had a secured interest in the property of V & V, in light of contrary testimony by the Bank's officer which clearly indicated that the Bank had not seized any of V & V's assets. The Bank did not provide the trucks to take the assets from the premises. The Debtor had arranged for trucks to remove the assets from the business premises and bring them to the Bank to be held by the Bank. The Bank subsequently returned the goods to the

Debtor since it had not seized them, nor had the Bank credited V & V with the value of the personal property delivered to the Bank by the Debtor. The record reflects that the Debtor's prior statements with respect to the Bank seizure and resale of V & V's assets were false. The Debtor's explanation at trial that he believed that voluntarily bringing V & V's assets to the Bank was the equivalent of the Bank seizing the assets and crediting V & V with the assets that were turned over to it is totally lacking in credibility considering the Debtor's education at the Columbia University School of Business.

## DISCUSSION

■ Corning, the creditor, has assumed the burden of proving its objection to the Debtor's discharge under Bankruptcy Rule 4005. Although the burden may shift to the Debtor to provide satisfactory, explanatory evidence, once the creditor has established a prima facie case, the ultimate burden rests with the creditor. *In re Reed,* 700 F.2d 986, 992–93 (5th Cir.1983).

The standard of proof in a discharge action is the preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The Plaintiff has pointed out the falsity, the omission, and the apparent untruthfulness of the Debtor's statements pursuant to the facts as outlined herein. It is necessary that the Debtor provide sufficient evidence to overcome the Plaintiff's prima facie case. The Debtor has failed to do so.

Section 727(a)(4)(A) of the Bankruptcy Code provides:

(a) the court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

■ This section of the Bankruptcy Code excepts from the granting of a discharge, a Debtor who knowingly makes false statements in regard to his schedules of assets, liabilities and statement of financial affairs. At trial, the Debtor admitted to having made several false statements, but Debtor's counsel argues that the false statements were unintentional and harmless. He claims that they were of inconsequential effect upon the creditor body, not material in nature, and even if he had submitted the correct information, the creditors would not have had any benefit from the truth. The Debtor claims that the checking accounts that he failed to list appeared to have no value and as of the petition date, there was an approximate balance of $12.00 in these accounts. He further states that the mortgage in which he had an interest was uncollectible, had no value and therefore was not scheduled. The Debtor claims that the so-called missing accounts and interest in the mortgage had little or no value, was not material, and did not prejudice the administration of the Bankrupt estate. These false statements were not about a one-time, long forgotten incident, but were facts known to the Debtor at the Petition Date. The Debtor argues that since no creditor would be harmed by these omissions or incorrect statements, the Debtor should be granted a discharge. He refers to the cases that suggest that an honest debtor is to be given a fresh start and that the evidence placed before the court be evaluated so as to be strictly construed in a light most favorable to the debtor seeking such discharge.

It is true that Section 727 of the Bankruptcy Code allows debtors to receive a general discharge of their obligations in keeping with the primary purpose of Bankruptcy law, to give honest debtors a fresh start "unhampered by the pressure and discouragement of pre-existing debt". *Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970). However, certain provisions of § 727 prohibit discharge for those who "play fast and loose with their assets or with the reality of their affairs." *In re Tully,* 818 F.2d 106, 110 (1st Cir.1987).

The Second Circuit recognizes that a discharge is a privilege granted to the honest debtor and is not a right accorded to all debtors. *In re Robinson,* 506 F.2d 1184, 1188 (2d Cir.1974).

■ To condone the use of multiple false statements and half truths throughout a petition violates the letter and spirit of the law.

It would send the wrong message to debtors. The protection of the Bankruptcy Code is not to be used as a sword against creditors. It is not intended to encourage well educated business persons to speak half truths or outright falsehoods in their dealings with commercial enterprises and society in general, in anticipation that no one will be the wiser, since the falsehoods are not so gross as to result in major harm to creditors even if they are later discovered. This attitude may be pervasive in our present society, but this Court will not condone such behavior. This Court believes that an accumulation of falsehoods add up to an intent to deceive. Our business and individual relationships need more honesty and less falsity.

Above the signature line on a debtor's petition appears the phrase "I declare under penalty of perjury that the information provided in this petition is true and correct." Are we to pretend this has no meaning or that it is not intended that a Debtor provide accurate and truthful answers? This Court believes the statement in the Petition was intended to be read and the signature placed upon the petition was to be deemed an acknowledgment of that admonition.

The purpose of Section 727(a)(4)(A) is well established.

It is to insure that dependable information is supplied for those interested in the administration of the bankruptcy estate on which they can rely without the need of the trustee or other interested party to dig out the true facts in examination or investigation.

*Guardian Industrial, Inc. v. Diodati*, 9 B.R. 804, 807 (Bankr.D.Mass.1981).

Furthermore:

Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the Bankrupt ... statements called for in the schedules ... must be regarded as serious business; reckless indifference to the truth ... is the equivalent of fraud.

*Diorio v. Kreisler–Borg Const. Co. (In re Diorio)*, 407 F.2d 1330, 1331 (2d Cir.1969).

■ In this Circuit, it is irrelevant whether the omitted information would have lead to the location of assets or whether creditors were harmed. *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir.1974). In *In re Robinson*, the Court of Appeals for the Second Circuit in denying a debtor's discharge stated that, "even though truthful responses to the questions propounded by the Bank's counsel would not have increased the value of the Bankrupt's estate, they were certainly material to discovering what, if any, assets Robinson may have had." In addition, "matters are material if pertinent to discovery of assets, including the history of a Bankrupt's financial transaction ... Therefore, knowing and fraudulent omission of a Bank account, whether or not it is closed at the time of the filing, warrants the denial of discharge."

■ Although it is unclear whether any one of Debtor's false or inaccurate statements is so gross as to amount to concealment, the Debtor's cumulative omissions were material and sufficient to bar his discharge since the omissions relate to his business transactions and his assets and liabilities. The fact that these assets may have had minimal value is for the parties in a case to determine and not for the Debtor to prejudge. His duty is merely to answer truthfully. It is left to the creditors or parties-in-interest to judge whether that information will aide them or prejudice them. *Morris Plan Industrial Bank v. Finn*, 149 F.2d 591, 592 (2d Cir.1945). Furthermore, a false oath respecting worthless assets can constitute a material omission for the purpose of Section 727(a)(4)(A). *Farouki v. Emirates Bank International, Ltd.*, 14 F.3d 244 (4th Cir.1994).

### CONCLUSION

This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1334 and Section 157(a). This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

The Debtor made material false statements in his petition and statement of affairs. Pursuant to Section 727(a)(4)(A), the Debtor having knowingly made a false oath in connection with his case, his discharge will be denied.

Having found that pursuant to Section 727(a)(4)(A), the Debtor made material false statements and that a discharge should not be granted, it is not necessary for this Court to consider the other claims made by Plaintiff since all of the Debtor's debts are not discharged.

Settle an Order in accordance with this decision.